[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 238.]

THE STATE EX REL. BALDZICKI ET AL. *v.* CUYAHOGA COUNTY BOARD OF
ELECTIONS.

[Cite as *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections,*
2000-Ohio-67.]

*Elections—Writ of prohibition sought to prevent submission of Ordinance No.
2000-68 to the Westlake electors at the November 7, 2000 election—Writ
denied.*

(No. 00-1647—Submitted October 10, 2000—Decided October 11, 2000.)

IN PROHIBITION.

———————————

{¶ 1} Crocker Park, LLC ("Crocker") is an Ohio limited liability company
that owns a seventy-five-acre parcel of land in the city of Westlake, Ohio. Crocker
proposed a development on the property composed of residential, retail, and office
uses as well as open and civic spaces. In order to so develop its property, Crocker
applied to have the property rezoned from its present classifications to Planned Unit
Development District.

{¶ 2} On July 20, 2000, the Westlake City Council held a public hearing at
which it considered Ordinance Nos. 2000-68 and 2000-71. Ordinance No. 2000-
68 provides for the rezoning of the Crocker property from Single Family District,
Multi-Family District, and Planned Unit Development District to Planned Unit
Development District. Ordinance No. 2000-68 also provides that the uses permitted
by the rezoning of the property shall be in accordance with a preliminary
development plan attached to and incorporated by reference as an exhibit to the
ordinance. As required by Section 13(a), Article IV of the Westlake Charter,[1]
Ordinance No. 2000-68 authorizes the submission of the rezoning to Westlake
electors at the November 7, 2000 election. Ordinance No. 2000-71 amends various
sections of Chapter 1212 of the Westlake Zoning Code, which sets forth
requirements for Planned Unit Development Districts.

{¶ 3} At its July 20 meeting, the city council amended Ordinance No. 2000-
68 by including changes in the preliminary development plan regarding maximum
heights of buildings and setback lines, and then adopted the ordinance as amended.
The city council noted that although these changes would be effective on that date,
the developer would have to provide a final amended preliminary development plan

———————————

1. This charter provision provides that no ordinance shall effect a change in zoning classification
that would allow multifamily dwellings, increase the density permitted on any property in any
residential district, or permit a shopping center development consisting of thirty acres or more
"unless the change or grant, after adoption in accordance with applicable administrative and/or
legislative procedures, is approved at a regular Municipal or general election by a majority vote of
the electors voting thereon, in the City of Westlake."

reflecting council's changes. The city council enacted Ordinance No. 2000-71 just before it enacted Ordinance No. 2000-68.

{¶ 4} On July 20, the council president signed Ordinance No. 2000-68, and on July 21, the mayor approved and signed the ordinance. On July 21, the clerk of council attested to the validity of Ordinance No. 2000-68, and beginning on July 27, the clerk of council posted the ordinance for a period of fifteen days in two public places in the city. On August 7, in accordance with city council's July 20 instructions, Crocker provided the city with a copy of an amended preliminary development plan incorporating council's revisions, and the amended plan was then posted as an exhibit to the ordinance. On August 8, the clerk of council sent a certified copy of Ordinance No. 2000-68 to respondent, Cuyahoga County Board of Elections, for placement on the November 7 election ballot.

{¶ 5} On August 15, relator Stephen L. Huber, a Westlake elector, filed a protest with the board of elections, challenging the placement of Ordinance No. 2000-68 on the November 7 ballot. Huber claimed that the ordinance could not be submitted to the electorate at the November 7 election for several reasons, including that a referendum petition being circulated would suspend the ordinance from taking effect, that the ordinance had not been posted with the amended preliminary development plan for fifteen days as required by Section 10, Article III of the Westlake Charter, that the council violated the zoning code by failing to approve the preliminary development plan and by not having Ordinance No. 2000-71 become effective before its adoption of Ordinance No. 2000-68, and that the mayor, council president, and clerk of council's attestations and validations of the ordinance were ineffective because the amended preliminary development plan had not yet been attached to the ordinance.

{¶ 6} Thirty-two days following the July 20 adoption of Ordinance Nos. 2000-68 and 2000-71, on Monday, August 21, referendum petitions were filed requesting that council reconsider the ordinances and, if not repealed, to submit them to a vote of electors at the next general or regular municipal election occurring more than ninety days after the filing date, *i.e.*, November 2001. On September 11, relators, Huber and other Westlake electors, joined in Huber's earlier protest and submitted a supplement to the protest in which they contended that the filing of the referendum petitions on Ordinance Nos. 2000-68 and 2000-71 suspended their effectiveness and prevented the placement of Ordinance No. 2000-68 on the November 7, 2000 election ballot.

{¶ 7} On September 11, the board conducted a combined hearing on relators' protest to Ordinance No. 2000-68 and their protest to an initiative petition concerning a separate enactment, Ordinance No. 2000-130. The board permitted

attorneys for the interested parties to present legal arguments on the protests, and the hearing was bifurcated for the arguments concerning the separate ordinances. No sworn testimony was introduced at the hearing. Further, although the city law director and relators' counsel evidently gave folders containing documents to the board, these documents were never formally introduced into evidence as exhibits and are not part of the record of the board proceedings filed by relators. After remarks by one board member that it was not the board's responsibility to address charter matters and the opinion of the county prosecutor's office that the board lacked jurisdiction over the protests concerning Ordinance No. 2000-68, the board voted unanimously to deny relators' protests against Ordinance No. 2000-68.

{¶ 8} On September 13, relators filed this action for a writ of prohibition to prevent the board from placing Ordinance No. 2000-68 on the November 7, 2000 election ballot for the city of Westlake.

{¶ 9} We permitted Crocker to intervene as a respondent, and the parties filed evidence and briefs pursuant to our expedited election schedule in S.Ct.Prac.R. X(9). On September 18, the clerk of council determined that the referendum petitions on Ordinance Nos. 2000-68 and 2000-71 were not valid because they were submitted after the effective date of the ordinances. The law director concurred with the clerk's view, concluding that the referendum petitions were invalid because the petitioners failed to file the petitions before the effective date of the ordinances, and Ordinance No. 2000-68, which already contains an automatic referendum provision, was not subject to further referendum. On September 21, the city council forwarded the referendum petitions to the board with copies of the clerk's and law director's opinions and requested that the board review the clerk's determination that the referendum petitions on the ordinances are not valid. On October 2, the board held a hearing on protests to the referendum petitions. At the conclusion of the hearing, the board granted the protests based on its determination that it lacked jurisdiction to consider the validity or sufficiency of the referendum petitions after the clerk of council had concluded that the petitions were invalid.

{¶ 10} This cause is now before the court for a consideration of the merits.

_____

*Kelley, McCann & Livingstone, LLP*, *Stephen M. O'Bryan*, *Thomas J. Lee* and *Timothy J. Duff*; *Brunner, Kirby & Jeffries Co., L.P.A.*, *Jennifer L. Brunner*, *Rick L. Brunner* and *David R. Funk*, for relators.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Reno J. Oradini, Jr.*, Assistant Prosecuting Attorney, for respondent Cuyahoga County Board of Elections.

*Donald J. McTigue*; *Chester, Willcox & Saxbe*, *John J. Chester* and *J. Craig Wright*, for intervenor respondent Crocker Park, LLC.

_____

***Per Curiam.***

{¶ 11} Relators request a writ of prohibition to prevent the submission of Ordinance No. 2000-68 to the Westlake electors at the November 7, 2000 election. In order to be entitled to a writ of prohibition, relators must establish that (1) the board is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Henry v. McMonagle* (2000), 87 Ohio St.3d 543, 544, 721 N.E.2d 1051, 1052.

{¶ 12} Therefore, in order for the writ to issue, relators must first establish that the board exercised quasi-judicial power in denying their protest and placing Ordinance No. 2000-68 on the November 7 ballot. See *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291, 649 N.E.2d 1205, 1207 ("[A] writ of prohibition may issue to prevent the placement of names or issues on a ballot even though the protest hearing has been completed, as long as the election has not yet been held").

{¶ 13} "Quasi-judicial authority is the power to hear and determine controversies between the public and individuals that *require* a hearing resembling a judicial trial." (Emphasis added.) *State ex rel. Wright v. Ohio Bur. of Motor Vehicles* (1999), 87 Ohio St.3d 184, 186, 718 N.E.2d 908, 910; *State ex rel. Hensley v. Nowak* (1990), 52 Ohio St.3d 98, 99, 556 N.E.2d 171, 173.

{¶ 14} In *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 72, 647 N.E.2d 769, 772, we held that prohibition would not issue to prevent a board of elections from conducting an election until 1997 for the office of city council member because, among other reasons, the board was not *required* to hold a quasi-judicial hearing on the matter:

"There is no evidence here that any written protest has been filed against any candidate. Moreover, *a written protest under R.C. 3501.39 and/or 3513.05 would be inapplicable*, since relators' objection is not against the qualifications of particular candidates, but instead assails the entire 1995 city council election, *i.e.*, relators/city council members attack even their own ability to be candidates for the 1995 election.

"*Respondents' decision* to conduct the city council election in 1995 for terms commencing in January 1996 *was thus not the appropriate subject for a statutory protest. Therefore, no hearing was required. Since no hearing resembling a judicial trial was either required or conducted, respondents' decision*

*to conduct the election was ministerial rather than quasi-judicial.* [Other election cases] *are distinguishable, since* [statutory] *written protests were filed, thereby requiring hearings and the exercise of quasi-judicial authority*." (Emphasis added.)

{¶ 15} Although relators filed a protest here, no statute or other pertinent law *required* the board to conduct a hearing resembling a quasi-judicial hearing on their protest against the placement of Ordinance No. 2000-68 on the election ballot. Cf. R.C. 3501.39(A)(1) and (2), providing for board hearings on written protests against petitions and candidacies. Relators' protest was neither against petitions nor candidacies. In addition, the mere fact that such a hearing was required on the other protest against an initiative petition for a separate ordinance did not transform that portion of the hearing regarding Ordinance No. 2000-68 into a required quasi-judicial proceeding. In fact, relators do not so argue.

{¶ 16} Relators instead claim that *any* protest hearing before a board of elections is a quasi-judicial proceeding and cite *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 686 N.E.2d 238, in support of their proposition. But *Cooker Restaurant* involved statutory protests requiring quasi-judicial proceedings. *Id.* at 306, 686 N.E.2d at 242; see, also, R.C. 4301.33(B) and 4305.14(D). As previously noted, no such proceedings were required here.

{¶ 17} Moreover, the board did not conduct a hearing sufficiently resembling a judicial trial in denying relators' protest. No sworn testimony was introduced at the hearing, and despite relators' reliance on counsel statements noting the presence of evidence folders or packets at the hearing, these documents were not formally introduced into evidence at the hearing and were not made part of the board hearing record. Cf. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 37, 671 N.E.2d 1, 3 ("The board exercised quasi-judicial authority by denying relators' protests following an R.C. 3501.39 hearing which *included sworn testimony*"); *Thurn*, 72 Ohio St.3d at 291, 649 N.E.2d at 1207 ("Thurn filed a written protest, and a hearing *which included sworn testimony* was held by the board"). (Emphases added.) In essence, the board hearing was more in the nature of a pretrial hearing on issues or an appellate argument than the evidentiary hearing normally associated with a typical judicial trial.

{¶ 18} Based on the foregoing, because the board did not exercise quasi-judicial authority in denying relators' protest, prohibition will not lie. *Youngstown*, 72 Ohio St.3d at 72, 647 N.E.2d at 772; *Wright*, 87 Ohio St.3d at 186, 718 N.E.2d at 910-911. Therefore, we deny the writ. By so holding, we need not consider the merits of relators' remaining claims or the parties' various motions. "It is well

settled that we will not indulge in advisory opinions." *In re Contested Election on November 7, 1995* (1996), 76 Ohio St.3d 234, 236, 667 N.E.2d 362, 363.

*Writ denied.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment.

RESNICK, J., not participating.

––––––––––––––––––