**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 523.]**

THE STATE EX REL. DEMALINE ET AL. *v.* CUYAHOGA CTY. BD. OF ELECTIONS
ET AL.

[Cite as *State ex rel. Demaline v. Cuyahoga Cty. Bd. of Elections*,
2000-Ohio-108.]

*Elections—Rezoning of property to Planned Unit Development District placed on*
*November 7, 2000 ballot—Mandamus sought to compel new ballot*
*language—Cause barred by laches, when.*

(No. 00-1793—Submitted October 31, 2000—Decided November 2, 2000.)

IN MANDAMUS.

―――――――――――

*Per Curiam.*

{¶ 1} In order to develop a seventy-five-acre parcel of land it owns in the city of Westlake, intervening respondent, Crocker Park, L.L.C. ("Crocker"), applied to rezone its property from its present zoning classifications to Planned Unit Development District.

{¶ 2} On July 20, 2000, the Westlake City Council enacted Ordinance No. 2000-68, which rezoned the Crocker property from Single-Family District, Multi-Family District, and Planned Unit Development District to Planned Unit Development District and authorized uses for the rezoned property in accordance with an incorporated preliminary development plan. Pursuant to Section 13(a), Article IV of the Westlake Charter, the ordinance also directed its submission to Westlake electors at the November 7, 2000 election. Section 6 of Ordinance No. 2000-68 specified the following ballot language:

"Be it ordained by the Council of the City of Westlake * * *:

"**Section 6.**  That the ballot submitting the question of approval of the aforesaid Ordinance shall read as follows:

"PROPOSED ORDINANCE NO. 2000-68

"CITY OF WESTLAKE

"A majority vote is necessary for passage.

"Shall Ordinance No. 2000-68, providing for the amendment of the Zone Map of the City of Westlake, which Zone Map is part of the Zoning Code of the City of Westlake, by changing the zoning of certain land located along Detroit and Crocker Roads, being all of Permanent Parcel Nos. 211-25-001, 211-25-004, 211-26-001, 211-27-037, 211-29-005 and 211-29-014 from Single Family District, Multi-Family District and Planned Unit Development District to Planned Unit Development District be approved?"

{¶ 3} The Westlake City Council also enacted Ordinance No. 2000-71 on July 20.  Ordinance No. 2000-71 amends various sections of Chapter 1212 of the Westlake Zoning Code, which sets forth requirements for the Planned Unit Development District classification.

{¶ 4} On August 15, Stephen L. Huber, a Westlake elector, by and through the same attorneys that represent relators, various other Westlake electors, filed a protest with respondent, Cuyahoga County Board of Elections, challenging the placement of Ordinance No. 2000-68 on the November 7 ballot.  On September 6, Crocker served a response on Huber's attorneys in which Crocker contended that the ordinance had amended the zoning code independently of Ordinance No. 2000-71.  Relators and Huber then joined in Huber's protest and submitted a supplement to the protest.  On September 11, Crocker served relators and Huber with a supplemental response in which it specified the scope of Ordinance No. 2000-68 as follows:

"Pursuant to Ordinance No. 2000-68, the Crocker Park land will be rezoned to Planned Unit Development District, the Preliminary Development Plan for

2

Crocker Park will be approved, and Crocker Park will be permitted to develop its land in accordance with the Ordinance as adopted. By virtue of this legislative act by both Council and the voters, the existing requirements for a planned unit development as set forth in Chapter 1212 of the Westlake Zoning Code will be deemed amended as applied to the Crocker Park land, to the extent set forth on the Preliminary Development Plan which is part of Ordinance No. 2000-68. * * * The modifications which would be effected if Ordinance No. 2000-71 were approved are not required for the effectiveness of Ordinance No. 2000-68 since all of the operative provisions of Ordinance No. 2000-71 have been placed on the Preliminary Development Plan which is incorporated in Ordinance No. 2000-68."

{¶ 5} Also on September 11, the board held a hearing on relators' protest. At the hearing, relators were represented by counsel. During the hearing, one of Crocker's attorneys claimed that Ordinance Nos. 2000-68 and 2000-71 were independent, *i.e.*, the validity of Ordinance No. 2000-68 was not dependent upon the validity of Ordinance No. 2000-71. Near the conclusion of the hearing, the board's deputy director stated that "[i]f the protest is denied, we need the Law Director of Westlake and the petitioners [*i.e.* Crocker and other initiative petitioners on a related issue] to follow our manager of our ballot department down so we can get the language done and send it to our vendor tonight." The board then denied relators and Huber's protest and certified Ordinance No. 2000-68 to the November 7 election ballot.

{¶ 6} On September 13, relators and Huber filed an action in this court (case No. 00-1647) for a writ of prohibition to prevent the board from placing Ordinance No. 2000-68 on the November 7 election ballot for the city of Westlake.[1] On September 24, the board approved the final proof of the ballots for the November 7 election, including the issue that places Ordinance No. 2000-68 before the

---

1. On October 11, 2000, we denied the writ in case No. 00-1647. *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 736 N.E.2d 893.

Westlake electors. The ballot language approved by the board is identical in all material respects to the ballot language contained in Section 6 of Ordinance No. 2000-68, with the references to the zoning map as part of the Westlake Zoning Code and to the permanent parcel numbers deleted:

"PROPOSED ORDINANCE

"CITY OF WESTLAKE

"A Majority Affirmative Vote is Necessary For Passage

"Shall Ordinance No. 2000-68, providing for the amendment of the Zone Map of the City, by changing the zoning of certain land located along Detroit and Crocker Roads, from Single Family District, Multi-Family District, and Planned Unit Development District to Planned Unit Development District, be approved?"

{¶ 7} The ballot language is also virtually identical to the language in the title of the ordinance.

{¶ 8} According to relators, they learned of the approved ballot language on September 29, through an affidavit filed in case No. 00-1647, even though they had requested the language from the board on September 25. In the affidavit filed in case No. 00-1647, Westlake Director of Planning Robert M. Parry stated that approval by electors of Ordinance No. 2000-68 would not merely rezone the property, but would also approve the preliminary development plan and amend the zoning code for that specific property. At an October 2 board hearing, which involved protests against referendum petitions on two ordinances, including Ordinance No. 2000-68, Westlake Law Director David Harbarger stated that in voting on Ordinance No. 2000-68, electors would not be voting simply on rezoning, they would also be voting on the development plan itself as well as amendments to the zoning code for the Crocker property.

{¶ 9} On October 3, relators and Huber filed a written protest with the board objecting to the ballot language that the board had approved for submission to the electorate at the November 7 election. Relators and Huber claimed that based on

4

Harbarger's statements at the October 2 board hearing, the ballot language did not convey to voters an intelligent idea about the scope of Ordinance No. 2000-68. They also requested an expedited hearing on the protest. Additionally on October 3, absentee ballots for Westlake were printed and ready for use, as required by R.C. 3509.01.

{¶ 10} On October 5, after conferring with board members, the board's counsel, and the office of respondent Secretary of State J. Kenneth Blackwell, the board's director advised relators and Huber that their protest failed to address any defects or ambiguities in the ballot language and denied their request for a hearing.

{¶ 11} On October 6, relators filed this action for a writ of mandamus to compel respondents, the board and the Secretary of State, to prepare and certify ballot language for the question of the approval of Ordinance No. 2000-68 that fairly, accurately, clearly, and completely describes the issue to be voted on. On October 10, absentee ballots for Westlake were mailed to electors. We granted Crocker's motion to intervene as a respondent, and the parties filed evidence and briefs pursuant to the expedited schedule in S.Ct.Prac.R. X(9).

{¶ 12} Relators claim that they are entitled to a writ of mandamus to compel the board and the Secretary of State to approve new ballot language that accurately describes Ordinance No. 2000-68. Relators contend that given the opinions of the Westlake Law Director and Planning Director concerning the breadth of the ordinance, the ballot language approved by the board does not accurately describe the ordinance.

{¶ 13} We need not address the merits of relators' claim because, as all respondents assert, this cause is barred by laches. "It is well established that in election-related matters, extreme diligence and promptness are required." *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White* (2000), 90 Ohio St.3d 212, 214, 736 N.E.2d 873, 875. When a party seeking extraordinary relief in an election-related matter fails to exercise the requisite diligence and promptness,

5

laches may bar the action. *State ex rel. Bona v. Orange* (1999), 85 Ohio St.3d 18, 20-21, 706 N.E.2d 771, 773. In extraordinary writ cases involving election matters, in order to avoid laches, relators bear the burden of establishing that they acted with the requisite diligence. *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 564, 701 N.E.2d 371, 373.

{¶ 14} Relators did not satisfy their burden here. Relators knew or should have known of comparable ballot language recommended by the Westlake City Council on July 20, *i.e.*, seventy-eight days before they filed this action, and relators knew or had reason to know of the board's process to finalize nearly identical ballot language on September 11, *i.e.*, twenty-five days before they sought extraordinary relief challenging the approved language. See *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775, 777 ("we have held that a delay as brief as nine days can preclude our consideration of the merits of an expedited election case"); cf. *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 414, 650 N.E.2d 859, 862 ("Appellants in this case arguably were either aware of or should have been aware of the ballot language prior to the November 2, 1993 election, yet they failed to raise this issue prior to learning of the adverse election results").

{¶ 15} Relators counter that they acted with the required diligence because they filed a protest concerning the ballot language with the board on October 3, which they claim was shortly after they learned of Crocker and the city's revised interpretation of Ordinance No. 2000-68, *i.e.*, that Ordinance No. 2000-68 did not need Ordinance No. 2000-71 to be effective. According to relators, they had no reason to believe that the ballot language was defective until they received the affidavit of the Westlake Planning Director in case No. 00-1647 on September 29 and when Crocker and the city specified their modified view of Ordinance No. 2000-68 at the October 2 board hearing.

{¶ 16} Relators' contentions, however, are meritless. As early as September 11, by written response to relators' supplemental protest and by oral argument at a board hearing at which relators were represented by counsel, Crocker argued that Ordinance No. 2000-68 was not dependent upon Ordinance No. 2000-71. Therefore, the evidence does not support relators' claim that this interpretation of Ordinance No. 2000-68 was initially introduced almost three weeks later. Relators were additionally advised by the board on September 11 that the board would finalize the ballot language on September 11, but relators did not ask to participate in the process or otherwise object to the ballot language that had been recommended by the city council in Ordinance No. 2000-68.

{¶ 17} Although there might have been some confusion engendered by the city and Crocker's apparent change in legal positions concerning the interrelation of Ordinance Nos. 2000-68 and 2000-71, any confusion did not *substantially* contribute to relators' unjustified delay in filing this action. Cf. *White*, 90 Ohio St.3d at 215-216, 736 N.E.2d at 876. *White*, a case not cited by relators, did not involve the propriety of ballot language and was filed almost three months *before* the election. By contrast, relators' delay resulted in the filing of this case *after* the statutory date requiring absentee ballots to be printed and ready for use. See R.C. 3509.01.

{¶ 18} Any minimal delay caused by the city and Crocker's modified interpretation of the effect of Ordinance No. 2000-68 does not excuse relators' delay. See *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 114, 712 N.E.2d 696, 702; *Manos*, 83 Ohio St.3d at 563, 701 N.E.2d at 372. The "clean hands" doctrine is inapplicable here. See *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 494, 700 N.E.2d 1234, 1237 (nonelection cases involving the affirmative equitable defense of laches are inapposite because they "do not normally require the 'extreme diligence and

promptness' required in election cases, nor do they implicate the rights of electors underlying the statutory time limits of R.C. 3505.01 and 3509.01").

{¶ 19} Further, absentee ballots have now been mailed to Westlake electors, and voting has commenced. This is consequently not a case in which prejudice to absentee voters would have happened "even 'under the best of circumstances.' " *Id.* at 494, 700 N.E.2d at 1237, quoting *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 369, 632 N.E.2d 883, 886.

{¶ 20} Based on the foregoing, we deny the writ based on laches. This result renders relators' claim and respondents board and Crocker's motions moot. See *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d at 242, 736 N.E.2d at 897, citing *In re Contested Election on November 7, 1995* (1996), 76 Ohio St.3d 234, 236, 667 N.E.2d 362, 363.

*Writ denied.*

MOYER, C.J., F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and PFEIFER, JJ., concur in judgment only.

RESNICK, J., not participating.

———————————

*Kelley, McCann & Livingstone, L.L.P.*, *Stephen M. O'Bryan*, *Thomas J. Lee* and *Timothy J. Duff; Brunner, Kirby & Jeffries Co., L.P.A.*, *Jennifer L. Brunner* and *Edwin L. Kirby, Jr.*, for relators.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Reno J. Oradini*, Assistant Prosecuting Attorney, for respondent Cuyahoga County Board of Elections.

*Betty D. Montgomery*, Attorney General, *Arthur J. Marziale, Jr., Darrell M. Pierre, Jr.*, and *David S. Timms*, Assistant Attorneys General, for respondent Secretary of State.

*Donald J. McTigue; Chester, Willcox & Saxbe*, *J. Craig Wright* and *John J. Chester; Jones, Day, Reavis & Pogue, Zachary T. Paris* and *Randall A. Cole*, for intervening respondent, Crocker Park, L.L.C.

_____