THE STATE EX REL. MANN ET AL. *v.* DELAWARE
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Mann v. Delaware Cty. Bd. of
Elections*, 143 Ohio St.3d 45, 2015-Ohio-718.]

(No. 2015–0144—Submitted February 25, 2015—Decided March 2, 2015.)

**Per Curiam.**

{¶ 1} Relators, Colleen L. Mann, Gus Comstock, and Mary Ann Williamson, commenced this original action in mandamus against respondents, the Delaware County Board of Elections and its members, seeking to compel the board to certify relators' referendum petition for the May 5, 2015 special-election ballot. We hold that the board of elections abused its discretion when it rejected two part-petitions in their entirety. We therefore grant the writ of mandamus and order the board to recalculate the number of valid signatures, including any valid signatures on part-petition Nos. 2 and 5 and, if appropriate, certify the referendum for the May 5 ballot.

*Background*

{¶ 2} This case arises out of a contract between respondents the city of Delaware and Berkshire Township for a proposed Joint Economic Development District ("JEDD"). On October 27, 2014, the Berkshire Township Board of Trustees adopted Resolution No. 14–10–13, approving the contract.

{¶ 3} Colleen Mann, a professional petition circulator, circulated part-petitions calling for a referendum on the Berkshire Township resolution. The part-petitions she circulated included part-petition Nos. 2 and 5.

{¶ 4} On January 6, 2015, the board of elections met to consider the referendum petitions. The deputy director asked the board to look at lines 9 and 10 of part-petition No. 2 and lines "29 and 30" (sic, 30 and 31)[1] of part-petition No. 5, "as they appeared to have one signer that signed for another." Lines 9 and 10 of part-petition No. 2 contained the names and signatures of Starla Rito and Jeremy Rito, both residents of 7503 Broxton Lane, Galena. Lines 30 and 31 of part-petition No. 5 contained the names and signatures of Joyce Davis and Ralph Davis, both residents of 3266 Ryan Meadow, Galena.

{¶ 5} The board minutes indicate that the board members discussed the petition signatures and looked at copies of all the signatures on file at the board office. The board then voted to disallow part-partition Nos. 2 and 5. The deputy director then reported that the petition had only 125 valid signatures and that 130 signatures were required to qualify for the ballot. The board therefore voted not to certify the referendum for the ballot.

{¶ 6} Counsel for the petition circulators promptly filed a protest letter and hearing request with the board of elections. The hearing occurred on January 20, 2015. The protesters offered ten exhibits into evidence, including affidavits from the petition signers and the circulator.

{¶ 7} First, the protesters offered an affidavit from Starla Rito, in which she attested that she lived at 7503 Broxton Lane, Galena, and that this was her residence on the date she signed the referendum petition. The affidavit continued:

> 3. The Referendum Petition contains the signature page of the part-petition that I signed, which is labeled part-petition number 2, on line 9, and contains my true and actual signature.
>
> 4. I did not sign the Referendum Petition for any other individual.

{¶ 8} The next exhibit was an affidavit from Jeremy Rito, who identified the signature on line 10 on part-petition No. 2 as his own and denied having signed the petition for anyone else. Ralph Davis submitted an affidavit identifying the signature on line 31 on part-petition No. 5 as his own. And Joyce Davis submitted an identical affidavit, identifying her signature as the one on line 30 of

---

1. The parties agree that the board was concerned about the signatures of Mr. and Mrs. Davis, which actually appear on lines 30 and 31.

part-petition No. 5. Both Ralph Davis and Joyce Davis denied that they signed the petition for any other individual.

{¶ 9} Next, the protesters presented an affidavit from the circulator, relator Colleen Mann, in which Mann denied ever allowing one person to sign a petition on behalf of someone else. Mann specifically stated that "Joyce Davis did not sign the petition for Ralph Davis or anyone else, and Ralph Davis did not sign the petition for Joyce Davis or anyone else as each signed their own name." As for the Ritos, Mann indicated that she could not recall much about the couple, but that she would not have allowed one to sign for the other.

{¶ 10} In addition to the affidavits, the protesters submitted examples of signatures from the four individuals on other documents. The protesters called no witnesses to offer live testimony. Berkshire Township presented additional signature samples.

{¶ 11} At the close of the hearing, the board voted unanimously to find that the petition signature of Starla Rito was not genuine.[2] The board denied the protest and rejected part-petition No. 2 in its entirety. Similarly, the board voted two-to-one to find that the signature of Ralph Davis was not genuine and to deny the protest and reject part-petition No. 5 in its entirety. Finally, the board voted two-to-one to refer part-petition Nos. 2 and 5 to the sheriff's office for investigation.

{¶ 12} Relators filed a petition for a writ of mandamus in this court on January 27, 2015. The court ordered the parties to file briefs and evidence on an expedited schedule. 141 Ohio St.3d 1459, 2015-Ohio-292, 24 N.E.3d 1178.

### Analysis

{¶ 13} The board of elections has the responsibility to "[r]eview, examine, and certify the sufficiency and validity of petitions and nominating papers." R.C. 3501.11(K). As part of that duty, boards must compare petition signatures with voter-registration cards to determine if the signatures are genuine. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 17. In a mandamus action challenging the decision of a county board of elections, the standard is whether the board "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 14} Relators do not appear to dispute that the board acted within its discretion when it rejected the two specific signatures. At the hearing, board member Helvey noted that on the petition, the "R" at the start of Ralph Davis's

---

.2. The fourth member of the elections board recused himself.

name was made in one continuous stroke, whereas the signature on the mortgage deeds featured a two-stroke "R." Likewise, we note that the signatures in the board's official poll books (six examples of which appear in the record) all begin with the two-stroke "R." In fact, even the affidavit submitted as evidence at the protest hearing contains the two-stroke "R." The sole outlier is the petition signature.

{¶ 15} Helvey expressed similar concerns about the Starla Rito signature. The record contains eight examples of her signature, signing either as "Starla Rito" or "Starla Cox." In six of them, the name "Starla" begins with a printed capital "S" that does not connect to the next letter: two signatures on voter-registration cards and four signatures on mortgage papers. The only exceptions are the petition signature and the affidavit, where the name begins with a cursive "S."

{¶ 16} Helvey's explanation demonstrates that the board did not act arbitrarily when it rejected the two signatures, even in the face of contrary evidence from the affidavits. *State ex rel. Stine v. Brown Cty. Bd. of Elections,* 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 21 (there is no abuse of discretion when a board of elections reaches a conclusion based on substantial but conflicting evidence).

{¶ 17} Having determined that the signatures of Ralph Davis and Starla Rito were not genuine (i.e., they did not match previous signatures), we must now consider whether the board abused its discretion when it proceeded to strike the part-petitions in their entirety. R.C. 3501.38(F) provides:

> [I]f a circulator knowingly permits an unqualified person to sign a petition paper or permits a person to write a name other than the person's own on a petition paper, that petition paper is invalid; otherwise, the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the paper.

{¶ 18} Thus, a board of elections may not reject an entire part-petition on the basis of false signatures unless there is evidence that the circulator *knew* that the signatures were false. *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections,* 65 Ohio St.3d 167, 173–174, 602 N.E.2d 615 (1992).

{¶ 19} Where petition signatures for multiple names are all in the same hand, and the circulator attests that he witnessed each signature and that each signature is that of the person it purports to be, "a board of elections may infer fraud." *Id.* at 174. Mann attested on each part-petition that she "witnessed the affixing of every signature" and that "every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to

be." The original allegation made by the board staff was that the purported signature of Starla Rito matched that of Jeremy Rito and that the purported signature of Ralph Davis matched that of Joyce Davis, suggesting that in each case, one spouse signed in the name of the other.

{¶ 20} But that is not what the board concluded. The board voted on two motions with respect to the Starla Rito signature. First, the board voted unanimously that the signature was not "genuine," which merely means that it did not match the signature on file with the board. Next, the board voted two-to-one to find that the signature "was signed by another." And based on that conclusion, the board invalidated the entire part-petition. The board's votes regarding the Ralph Davis signature followed the same pattern.

{¶ 21} The board erred as a matter of law in its conclusion that part-petitions must automatically be disqualified in their entirety if the signatures are fraudulent. The board did not establish a sufficient basis from which to infer that the circulator *knew* that the signatures were fraudulent.

{¶ 22} The board staff started to lay this foundation by suggesting that one spouse signed for the other. If true, then it logically follows that either the circulator saw one spouse sign for another or she allowed the petition to be signed outside her presence, which is equally disqualifying. But the board never found that Jeremy Rito and Joyce Davis signed the petitions for their spouses. In fact, the board never compared the disqualified signatures to those of the spouses to see if they were in the same hand. To the contrary, board member Helvey, who voted in the majority, stated, "So then we get into, okay, if these aren't their genuine signatures who signed them. And I don't know." At most, then, the board should have rejected only the two specific signatures, not the whole part-petitions.

## Conclusion

{¶ 23} Because there was insufficient evidence from which the board could infer that the circulator knew that the signatures were false, we hold that the board abused its discretion. The board is hereby ordered to review the signatures on part-petition Nos. 2 and 5, recalculate the number of valid signatures, and take whatever action is appropriate under R.C. 3501.11(K) based on that recalculation.

Writ granted.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., concurs in judgment only.

McTigue, McGinnis & Colombo, L.L.C., Donald J. McTigue, Mark A. McGinnis, J. Corey Colombo, and Derek S. Clinger, for relators.

Carol Hamilton O'Brien, Delaware County Prosecuting Attorney, and Andrew J. King and Christopher D. Betts, Assistant Prosecuting Attorneys, for respondents Delaware County Board of Elections and its members.

Rinehart Legal Services, Ltd., and Christopher A. Rinehart; and Burkhart Law, L.L.C., and Matthew J. Burkhart, for respondent Berkshire Township.