**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Robinson v. Crawford Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-3378.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3378

THE STATE EX REL. ROBINSON *v*. CRAWFORD COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Robinson v. Crawford Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-3378.]**

*Elections—Mandamus—Writ sought to compel board of elections to place relator's name on general-election ballot as a candidate for a city-council seat— Board of elections did not abuse its discretion or act in disregard of applicable legal provisions in invalidating entire part-petition on which one person had signed two names—R.C. 3501.38(E) and (F)—Writ denied.*

(No. 2023-1136—Submitted September 19, 2023—Decided September 21, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} Relator, Connie S. Robinson, seeks a writ of mandamus ordering respondent, the Crawford County Board of Elections, to certify her name as a candidate for a seat on the Galion City Council on the November 7 general-election

ballot. Robinson alleges that the board improperly invalidated an entire part-petition, causing her candidate petition to be short of the number of signatures required to qualify for the ballot. Because the board did not abuse its discretion or disregard applicable law in striking the part-petition in its entirety, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 2}** Robinson seeks election to the Second Ward seat on the Galion City Council. She circulated a nominating petition to obtain the 50 valid signatures needed to qualify for the ballot. On August 7, 2023, Robinson filed her nominating petition, consisting of four part-petitions, with the board.

**{¶ 3}** On August 21, the board held a meeting to certify the candidates and issues that would appear on the November 7 ballot. As to Robinson's candidacy, the board determined that one of the part-petitions circulated by Robinson contained two signatures that were signed by the same person. Specifically, it appeared to the board that Erica Bauer had signed her own name on line 17 of the part-petition in question and then signed her husband's name, Tim Bauer, on line 18. The board therefore invalidated the part-petition in its entirety. Without that part-petition, Robinson did not have enough signatures to qualify for the ballot. But if the valid signatures on the disputed part-petition had been counted, Robinson would have qualified for the ballot. The board notified Robinson by letter that it would not certify her name as a candidate for a seat on the Galion City Council.

**{¶ 4}** Robinson submitted a request for reconsideration to the board on August 24. Robinson contended that she "did not knowingly permit an unqualified person to sign her petition or knowingly permit a person to write a name other than their own." (Underlining sic.) Accordingly, she argued that the board should have rejected Tim Bauer's signature but not the entire part-petition. In support of reconsideration, Robinson submitted an affidavit attesting that until the board brought the two signatures to her attention, she did not know that Erica Bauer had signed her husband's name on the part-petition Robinson circulated. Robinson also

testified that had she known of the forged signature, she would have crossed it off the part-petition.

{¶ 5} Following a hearing, the board unanimously denied reconsideration. Rejecting Robinson's contention that she had not "knowingly" allowed Erica Bauer to sign her husband's name on the part-petition, the board observed: "[T]he candidate presented her petition to one person for a signature and received two signatures.  No malicious intend [sic] is suspected; nonetheless, the Board determines that this conduct was done knowingly."  As an additional basis to deny reconsideration, the board cited the circulator statement on the part-petition in question.  The circulator statement reads:

> I, Connie Sue Robinson, declare under penalty of election falsification that I reside at the address appearing below my signature; that I am the circulator of the foregoing petition containing 18 signatures; *that I witnessed the affixing of every signature*; that all signers were to the best of my knowledge and belief qualified to sign; *and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be* or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

(Emphasis added.)

{¶ 6} According to the board, Robinson admitted that she had not witnessed the number of signatures that she had declared having witnessed, which necessarily meant that her circulator statement was false.

{¶ 7} Robinson commenced this action on September 6, seeking a writ of mandamus ordering the board to certify her name to the general-election ballot as a candidate for the Second Ward seat on the Galion City Council.  The parties

submitted evidence and merit briefs in accordance with the expedited-election-case schedule in S.Ct.Prac.R. 12.08.

## II. ANALYSIS

{¶ 8} To be entitled to a writ of mandamus, Robinson must establish by clear and convincing evidence that (1) she has a clear legal right to the requested relief, (2) the board is under a clear legal duty to perform the requested act, and (3) she does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Given the proximity of the general election, Robinson lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Grumbles v. Delaware Cty. Bd. of Elections*, 165 Ohio St.3d 552, 2021-Ohio-3132, 180 N.E.3d 1099, ¶ 8.

{¶ 9} The remaining elements of the analysis require the court to determine whether the board of elections engaged in fraud, corruption, or an abuse of discretion, or acted in clear disregard of applicable law. *Id.* Robinson does not argue that the board committed fraud or is guilty of corruption. Accordingly, Robinson can prevail only if she shows that the board abused its discretion or acted in clear disregard of the applicable law in striking the part-petition in question.

### A. R.C. 3501.38(F)

{¶ 10} In support of her claim that the board should not have invalidated the entire part-petition containing the forged signature, Robinson relies on R.C. 3501.38(F), which states:

> Except as otherwise provided in section 3501.382 of the Revised Code [allowing an attorney-in-fact to sign for a disabled registered voter], if a circulator *knowingly* permits an unqualified person to sign a petition paper or permits a person to write a name other than the person's own on a petition paper, that petition paper is invalid; *otherwise, the signature of a person not qualified to sign*

> *shall be rejected but shall not invalidate the other valid signatures*
> *on the paper.*

(Emphasis added.)

**{¶ 11}** "[A] board of elections may not reject an entire part-petition on the basis of false signatures unless there is evidence that the circulator knew that the signatures were false." (Emphasis deleted.) *State ex rel. Mann v. Delaware Cty. Bd. of Elections*, 143 Ohio St.3d 45, 2015-Ohio-718, 34 N.E.3d 94, ¶ 18. Robinson argues that because she has stated under oath that she did not *knowingly* allow Erica Bauer to sign her husband's name to the part-petition, only the invalid signature should have been rejected. As further evidence of her state of mind, Robinson says that if she had known of the invalid signature, she "would have crossed it off" the petition before submitting it, as permitted by R.C. 3501.38(G). The fact that she did not avail herself of the simple solution of striking the signature shows, according to Robinson, that she did not *knowingly* allow the forged signature.

**{¶ 12}** Robinson relies on our decision in *Mann* as support for granting the writ. In *Mann*, a referendum petition failed to qualify for the ballot after the board of elections invalidated two part-petitions in their entirety because one signature on each of them was not genuine. *Id.* at ¶ 5, 11. In a mandamus action challenging the board's decision, this court held that the board should not have invalidated the part-petitions in their entirety. *Id.* at ¶ 21. The board in *Mann* had concluded that the signatures in question did not match those on file with the board of elections. *Id.* at ¶ 20. But we held that evidence of petition signatures that did not match those on file with the board of elections, without more, "did not establish a sufficient basis from which to infer that the circulator *knew* that the signatures were fraudulent." (Emphasis sic.) *Id.* at ¶ 20-21. Thus, on the record before it in *Mann*, this court held that the board of elections should have invalidated only the two fraudulent signatures. *Id.* at ¶ 22.

**{¶ 13}** *Mann* is distinguishable because the board in this case relied on more than a mismatch between a person's petition signature and the person's signature on file. First, it was evident to the board that the signatures of Erica Bauer and Tim Bauer on the disputed part-petition appeared to have been written by the same hand. "Where petition signatures for multiple names are all in the same hand, and the circulator attests that he witnessed each signature and that each signature is that of the person it purports to be, 'a board of elections may infer fraud.' " *Mann* at ¶ 19, quoting *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 174, 602 N.E.2d 615 (1992).

**{¶ 14}** Second, the board observed that Robinson's own affidavit testimony established that she "presented her petition to one person for a signature and received two signatures." The term "knowingly" as used in R.C. 3501.38(F) means that " 'one is aware of existing facts.' " *Citizens for Responsible Taxation* at 174, quoting *State ex rel. Carson v. Jones*, 24 Ohio St.2d 70, 72, 263 N.E.2d 567 (1970). In this case, the evidence shows that when Robinson gave the part-petition to Erica Bauer for her signature, there were two remaining lines on which to sign (lines 17 and 18), but when Bauer gave it back to Robinson, both lines had signatures on them, written in similar handwriting. Based on these circumstances, the board determined that Robinson acted knowingly.

**{¶ 15}** The board did not err in this determination. Despite Robinson's protestations that she did not knowingly allow Erica Bauer to sign for Tim Bauer, the evidence before the board was enough to declare the part-petition invalid. *See State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 22 ("evidence of fraud triggers full invalidation of a part-petition"); *see also State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 185, 724 N.E.2d 771 (2000) ("We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue"). Because the board did not abuse its discretion or disregard applicable law in

deciding that Robinson knowingly allowed a person to sign another person's name on the candidate petition, the board properly invalidated the part-petition in its entirety.

*B. R.C. 3501.38(E)*

**{¶ 16}** As an additional basis for invalidating the disputed part-petition in full, the board noted that Robinson's circulator statement was false. The circulator statement appearing on the candidate petition is required by R.C. 3501.38(E)(1), which states:

> On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

**{¶ 17}** R.C. 3501.38(E) requires strict compliance, and therefore, a false circulator statement is a valid reason for invalidating an entire part-petition. *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49. And in this case, the board properly determined that Robinson's statement was false. Robinson admitted that she had not witnessed Tim Bauer sign the part-petition, and yet she signed a circulator statement stating that she had witnessed every signature.

**{¶ 18}** Robinson counters that a forged signature should not invalidate an entire part-petition, because that would be a harsh result for someone who

unknowingly permitted a person to write a name other than his own. This is so, says Robinson, because any part-petition with a forged signature "would [necessarily] have a circulator statement problem" because the circulator would not have witnessed a genuine signature.

{¶ 19} Robinson's argument fails because it ignores that the circulator statement gives a safe harbor: the circulator must state under penalty of election falsification "that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is *to the best of the circulator's knowledge and belief* the signature of the person whose signature it purports to be." (Emphasis added.) R.C. 3501.38(E). A circulator who did not know that someone signed the name of another does not violate R.C. 3501.38(E) if the circulator witnessed every signature and to the best of the circulator's knowledge and belief, each person signed his or her own name. In that case, the part-petition with the forged signature need not be invalidated in its entirety. *See Mann*, 143 Ohio St.3d 45, 2015-Ohio-718, 34 N.E.3d 94, at ¶ 19-22. But in this case, Robinson does not dispute that she did not witness anyone sign Tim Bauer's name on the part-petition. Because Robinson falsely stated that she "witnessed the affixing of every signature," the board did not abuse its discretion or disregard applicable law in invalidating the disputed part-petition in its entirety.

### III. CONCLUSION

{¶ 20} For the foregoing reasons, the board properly invalidated the part-petition on which Erica Bauer signed her name and Tim Bauer's name. We therefore deny the writ.

Writ denied.

KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, and DETERS, JJ., concur.

DONNELLY and STEWART, JJ., concur in judgment only and would deny the writ solely on the basis of R.C. 3501.38(E).

————————

Wade Law Office, L.L.C., and E. Roberta Wade, for relator.

Matthew E. Crall, Crawford County Prosecuting Attorney, for respondent.

_____