[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Miller v. Union Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-3664.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-Ohio-3664.

THE STATE EX REL. MILLER ET AL. *v*. UNION COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Miller v. Union Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-3664.]**

*Elections—Mandamus—Writ sought to compel board of elections to place referendum on general-election ballot—Board of elections abused its discretion when it removed referendum from ballot—Alleged misrepresentations in advertisement and statements made by petition circulators did not invalidate underlying petition—Alleged misrepresentations regarding use of aerial-photo map used by petition circulators did not invalidate underlying petition—Writ granted.*

(No. 2023-1180—Submitted October 3, 2023—Decided October 7, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Darrin Miller, Kelly Thornton, Claudia Bartow, and Laura Falk, filed an action seeking a writ of mandamus ordering respondent, the Union County Board of Elections, to place a referendum on the November 7, 2023 general-election ballot. We grant the writ.

## I. FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

{¶ 2} In November 2022, the Marysville City Council passed an ordinance (the "annexation ordinance") to annex 263.25 acres that adjoins Marysville. *See generally* R.C. 709.02 et seq. (process by which a city may annex adjoining territory). At some of the same meetings during which the annexation ordinance was discussed, the city council also considered a proposal to rezone a portion of the territory that would be annexed. A developer, Highland Real Estate, was considering building a new residential development called Stillwater Farms on the property. The territory to be rezoned consisted of 196.05 acres—approximately three-quarters of the total 263.25 acres to be annexed. The city council passed an ordinance (the "zoning ordinance") to rezone the territory from agricultural use to a planned-unit development the same day it passed the annexation ordinance.

{¶ 3} A petition committee soon began the process to hold a referendum on the annexation ordinance. *See generally* R.C. 731.29 through 731.40 (process for holding a referendum on a municipal ordinance). Relators are all members of the petition committee. Relators requested and obtained certified copies of the annexation ordinance and its exhibits. One of the exhibits to the annexation ordinance was a map of the property to be annexed. Before circulating the referendum petitions, relators filed a certified copy of the ordinance and its exhibits with the Marysville Finance Department. *See* R.C. 731.32.

{¶ 4} Relators and others then circulated the referendum petitions for signatures. In December 2022, they submitted the completed part-petitions to the Marysville Finance Department. Marysville filed the referendum petitions with the

board of elections, and the board of elections determined that the petitions contained 1,311 valid signatures, more than the 824 signatures required to place the referendum on the ballot. Marysville's finance director certified to the board of elections the sufficiency and validity of the referendum petition. *See* R.C. 731.29. The board of elections certified the referendum to the November 7, 2023 general-election ballot. There is some discrepancy regarding the exact date that the board of elections certified the referendum to the ballot, but it did so by April 4, 2023, at the latest.

{¶ 5} On May 2, intervening respondent Highland Realty Development and another protestor, Katherine Crocco, filed an unsuccessful election protest regarding the referendum. In their protest, Highland Realty Development and Crocco asserted that the annexation ordinance was an administrative action not subject to referendum. On June 13, the board of elections held a hearing on that protest and denied it. There is no evidence in the record that Highland Realty Development or Crocco filed a lawsuit challenging this denial.

{¶ 6} On August 11, intervening respondent Richard Warner filed an election protest to the referendum, asserting that circulators of the petition intentionally made misleading statements to potential petition signers. *See* R.C. 3501.39(A). The board of elections held a hearing on Warner's protest on August 23.

{¶ 7} At the hearing, Warner called four witnesses, including himself. These witnesses were all individuals who had been approached by circulators to sign the referendum petition. They testified that the circulators discussed impacts that the proposed Stillwater Farms development would potentially have on the community, such as its impact on taxes, traffic congestion, and school crowding. They testified that the circulators either downplayed or did not mention that the referendum petition directly concerned only whether the territory would be annexed

by Marysville, not whether the territory would be rezoned or if the proposed development would be built.

{¶ 8} Relators also called two witnesses. One of relators' witnesses was Jason Axe, who had helped train the circulators and had provided materials to the circulators. Axe testified that relators posted an advertisement in a local newspaper regarding the referendum petition. The advertisement stated that the city council had annexed the territory "so over 600 dwellings can be built there," and it directed voters to attend one of two meetings to sign the petition.

{¶ 9} Axe also testified that the circulators were provided with an aerial photo of Marysville and the surrounding area on which the proposed residential development was highlighted. However, the highlighted area was not of the *full* 263 acres that would be annexed as part of the annexation ordinance. Instead, it was of the 196 acres that would be rezoned and developed into a residential subdivision. In addition to the aerial-photo map, a map of the full property to be annexed was included with the referendum petition as an official exhibit to the annexation ordinance. Another witness and circulator, Robert Hammond, testified that if a potential signer did not know where the property was in relation to Marysville, he would show them the aerial-photo map. However, none of Warner's witnesses testified that they saw the aerial-photo map or relied on it when deciding whether to sign the petition.

{¶ 10} At the conclusion of the hearing, the board of elections voted on a motion to deny the protest. The vote resulted in a two-two tie. Under R.C. 3501.11(X), the board of elections certified the tie vote to the secretary of state.

{¶ 11} The board members submitted explanations of their votes to the secretary of state. One of the board members who voted to exclude the referendum from the ballot wrote that relators disclosed that they had used a map that inaccurately displayed the area that would be annexed. He also wrote that relators had "confused the voters with annexation and rezoning language." The other board

member who voted to exclude the referendum from the ballot wrote, "I thought it was obvious that the real intent of the circulators was to stop the planned unit development. * * * There seemed to be concerns by the witnesses as to what the circulators told citizens about increased taxes." This board member also wrote that his "decision dealt with the maps outlining the area in question. They appear to be incorrect."

{¶ 12} On September 8, the secretary of state voted to sustain the protest and exclude the referendum from the ballot. The secretary of state wrote that "the map presented to Referendum signers was inaccurate and objectively misleading to an average voter." He also wrote that "at least two citizens testified that circulators addressed issues concerning tax increases, the number of houses to be built, issues with utility and infrastructure, and other matters that were not relevant to the annexation itself when the Referendum petition was circulated for their signatures." He concluded "that the map and other information presented to Referendum petition signers were objectively inaccurate, misleading, or contained material omissions that would confuse the average person as to the annexation ordinance." As such, he stated that "the Referendum petition should be deemed invalid."

{¶ 13} On September 18, relators filed this original action for a writ of mandamus. They request a writ of mandamus to compel the board of elections to place the referendum on the November 7 general-election ballot. They also seek an award of attorney fees and expenses.

{¶ 14} We granted a motion to intervene as respondents filed by several individuals and entities—Richard Warner, Mark Meyer, Pamela Meyer, Lapama'a, L.L.C., Irwin Farms, Ltd., and Highland Realty Development. __ Ohio St.3d __, 2023-Ohio-3449, __ N.E.3d __. Warner was the protestor in the underlying election protest. Mark Meyer, Pamela Meyer, Lapama'a, L.L.C., and Irwin Farms, Ltd., own property that is in or neighbors the territory subject to the annexation ordinance. Highland Realty Development is the developer of Stillwater Farms.

## II.  ANALYSIS

### A.  Legal standards

{¶ 15}  To obtain a writ of mandamus, relators must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board of elections to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law.  *State ex rel. Clark v. Twinsburg*, 169 Ohio St.3d 380, 2022-Ohio-3089, 205 N.E.3d 454, ¶ 16.  Relators lack an adequate remedy in the ordinary course of the law due to the proximity of the election.  *See id*.

{¶ 16}  "In a mandamus action challenging the decision of a county board of elections, the standard is whether the board 'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *State ex rel. Mann v. Delaware Cty. Bd. of Elections,* 143 Ohio St.3d 45, 2015-Ohio-718, 34 N.E.3d 94, ¶ 13, quoting *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.  "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 305, 686 N.E.2d 238 (1997).

### B.  Laches

{¶ 17}  The board of elections and intervening respondents argue that relators' action is barred by laches.  We disagree.

{¶ 18}  " 'Extreme diligence and promptness are required in elections-related matters.' " *Clark*, 169 Ohio St.3d 380, 2022-Ohio-3089, 205 N.E.3d 454, at ¶ 11, quoting *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 16.  "Laches will bar an action when there is (1) an unreasonable delay or lapse of time in asserting a right, (2) the absence of an excuse for the delay, (3) actual or

constructive knowledge of the injury or wrong, and (4) prejudice to the opposing party." *Id.* Laches defenses rarely prevail in election cases. *Id.*

{¶ 19} Here, the secretary of state broke the tie vote on Friday, September 8. On Monday, September 11, relators requested a copy of the secretary's letter and an expedited transcript of the protest hearing from the board of elections. Relators filed this action on Monday, September 18. Such a delay is not unreasonable under these circumstances. *See State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 15 (laches did not bar claim where relator promptly requested a hearing transcript and filed suit five business days after the transcript became available).

{¶ 20} Laches also requires that the opposing party be prejudiced by the delay. *Clark* at ¶ 11. The board of elections argues that it was prejudiced by the delay because on September 15, it programmed its elections-management system for the general election, and on September 22, it sent out absentee ballots to overseas and uniformed-services voters as required by law. *See* R.C. 3509.01(B)(1). But even if relators had filed this action several days earlier, it is unlikely that we would have issued a decision by the September 15 or September 22 dates. *See State ex rel. Pinkston v. Delaware Cty. Bd. of Elections*, __ Ohio St.3d __, 2023-Ohio-1060, __ N.E.3d __, ¶ 18 (even if mandamus action had been filed within a week of board of elections' decision on February 21, this court's decision would not likely have been in time to meet absentee-ballot deadline of March 17); *see also State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13.

{¶ 21} In addition, regarding intervening respondent Warner's argument that the action is barred by laches, in many ways the lateness of this case is the fault of Warner. The board of elections certified placement of the referendum on the ballot by April 4. Warner did not file his election protest until August 11 and has provided no explanation for why he waited over four months to do so. Election

protestors may not delay their protest for months and then argue that a mandamus action arising from the result of the protest is barred by laches. *See State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 28.

## C. The secretary of state is not a necessary and indispensable party

{¶ 22} Intervening respondents argue that the writ should be denied because the secretary of state is a necessary and indispensable party and relators did not add the secretary as a respondent. The board of elections does not make this argument. We do not agree with the intervening respondents.

{¶ 23} A "party's failure to join an interested and necessary party constitutes a jurisdictional defect that precludes the court from rendering a judgment in the case." *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas, Juvenile Div.*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, ¶ 27. Civ.R. 19(A)(1) provides that a party must be joined in an action if "in his absence complete relief cannot be accorded among those already parties." Here, relators have petitioned this court to request a writ of mandamus ordering the board of elections to place the referendum on the ballot. Such relief can be granted without the secretary of state's involvement. He is therefore not a necessary party under Civ.R. 19(A)(1). Nor has the secretary claimed an interest relating to the subject of this action. *See* Civ.R. 19(A)(2)

{¶ 24} Intervening respondents also argue that the secretary is a necessary party under R.C. 3501.11(X). R.C. 3501.11(X) provides that boards of elections shall submit tie votes or disagreements to the secretary of state "who shall summarily decide the question, and the secretary of state's decision shall be final." Here, the secretary of state broke the tie vote of the board of elections. But nothing in R.C. 3501.11(X) indicates that the secretary of state must be named as a party in all actions against a board of elections that relate to a matter in which the secretary broke a tie vote.

8

**{¶ 25}** The secretary of state could likely intervene in this matter if he so desired. *See State ex rel. Barth v. Hamilton Cty. Bd. of Elections*, 65 Ohio St.3d 219, 219-220, 602 N.E.2d 1130 (1992) (granting secretary of state's motion to intervene in prohibition action relating to a matter in which the secretary broke the tie vote of a board of elections); *see also State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 1206, 1206-1207, 647 N.E.2d 1383 (1995) (Douglas, J., concurring) (court properly granted secretary of state's motion to intervene in quo warranto action relating to a matter in which the secretary broke the tie vote of a board of elections). But he is not a necessary party.

**D. The board of elections and the secretary of state improperly removed the referendum from the ballot**

**{¶ 26}** R.C. 731.29 et seq. establishes the process by which a referendum of a municipal ordinance can be placed on the ballot, and the Marysville City Charter has adopted this process. *See* Marysville City Charter, Section 4.02 ("[t]he electors reserve to themselves the powers of initiative and referendum to the extent permitted and by the procedure provided by the Law and Constitution of Ohio"). Relators followed this process, and the board of elections certified the referendum to the ballot no later than April 4, 2023.

**{¶ 27}** Warner brought a protest against the certification on the grounds that relators and their circulators had intentionally misled signers about the referendum petition. The board of elections and the secretary of state voted to sustain the protest and exclude the referendum from the ballot for two reasons: (1) relators and their petition circulators misrepresented the contents of the annexation ordinance and the referendum petition, and (2) the aerial-photo map of the territory to be annexed provided to potential signers by the circulators was inaccurate and misleading.

*1. Relators' alleged misrepresentations*

**{¶ 28}** Relators argue that the alleged misrepresentations in oral statements made by the circulators and in written statements made by relators in an

advertisement were not proper grounds for the board of elections and the secretary of state to remove the referendum from the ballot. We agree.

{¶ 29} The circulators, when collecting signatures, discussed the impact that the planned Stillwater Farms development might have on issues such as taxes, traffic congestion, and school crowding. In addition, relators placed an ad in a newspaper stating that the city council had annexed the territory "so over 600 dwellings can be built there." The board of elections and intervening respondents argue generally that these concerns discussed by relators and the circulators relate to the effects of the *zoning ordinance*, not the *annexation ordinance*. Because the referendum petition only sought a referendum on the annexation ordinance, the board of elections argues that the circulators violated R.C. 731.36(A). R.C. 731.36(A) provides that "[n]o person shall, directly or indirectly [w]illfully misrepresent the contents of any initiative or referendum petition."

{¶ 30} Even if the circulators willfully misrepresented the contents of the petition, however, "evidence of a violation of R.C. 731.36(A) * * * would not have invalidated the referendum petition." *State ex rel. Baur v. Medina Cty. Bd. of Elections*, 90 Ohio St.3d 165, 169, 736 N.E.2d 1 (2000). Nothing in R.C. 731.36(A) provides that a board of elections may invalidate a petition or refuse to place a referendum on the ballot if a circulator violates the provision. "Instead, the General Assembly specifies fines for violations of R.C. 731.36(A)." *Baur* at 169; *see also State ex rel. Hasselbach v. Sandusky Cty. Bd. of Elections*, 157 Ohio St.3d 433, 2019-Ohio-3751, 137 N.E.3d 1128, ¶ 26 (applying same reasoning when deciding that a violation of R.C. 731.35, which requires referendum petitioners to file a financial-disclosure statement, does not invalidate the underlying petition); *State ex rel. Jamison v. Franklin Cty. Bd. of Elections*, 2012-Ohio-3436, 974 N.E.2d 1279, ¶ 6, 21 (10th Dist.) (analyzing a similar statutory provision, R.C. 3599.14(A)(1), and holding that circulators' misrepresentations regarding the specific seat that a judicial candidate was running for would not invalidate the nominating petition).

{¶ 31} The board of elections and intervening respondents also cite several cases in which this court has held that a written petition summary may not be misleading, inaccurate, or contain material omissions. *See*, *e.g.*, *State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, ¶ 12-13; *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 7-8. They argue that the circulators' statements were misleading, inaccurate, or contained material omissions. The cases they rely on, however, all involve interpretations of R.C. 519.12(H), which applies to referendums of township zoning resolutions and requires that the petition contain a written summary of the resolution sought to be referred. Here, the referendum petition was presented under R.C. 731.31, which does not require petitioners to include a written summary. These cases have no relevance to the statements made by the circulators in this case.

{¶ 32} Because the alleged misrepresentations in relators' advertisement and in the statements made by the circulators would not invalidate the underlying petition, the board of elections and the secretary of state abused their discretion and acted in clear disregard of applicable law when they removed the referendum from the ballot for that reason.

*2. The aerial-photo map*

{¶ 33} Relators also argue that the alleged misrepresentations regarding the aerial-photo map were not a proper reason for the board of elections to remove the referendum from the ballot. We agree.

{¶ 34} The annexation ordinance includes a map of the entire territory to be annexed, which the circulators included with the petition. In addition, relators provided the circulators with another map, which was an aerial photo of Marysville and the surrounding land area with the area of the proposed development highlighted on it. This aerial map was originally presented by the developers of Stillwater Farms at a city-council meeting. However, the highlighted area was *not*

of the full 263 acres that would be annexed under the annexation ordinance. Instead, it was of the 196 acres that would be rezoned and developed into the Stillwater Farms subdivision. The aerial-photo map thus showed only about three-quarters of the total area that would be annexed.

{¶ 35} One of the circulators testified that if potential signers did not know where the property was in relation to Marysville, he would show them the aerial-photo map. None of the protestors' witnesses testified that they saw the aerial-photo map or relied on it when deciding whether to sign the petition.

{¶ 36} The board of elections and intervening respondents argue that the aerial-photo map was inaccurate and misleading to potential signers. The board of elections first relies on R.C. 731.36(A) and argues that the circulators willfully misrepresented the petition by including the aerial-photo map with their materials. As discussed above, however, even if the circulators did violate R.C. 731.36(A), such a violation would not be grounds for invalidating the petition. *See Baur*, 90 Ohio St.3d at 169, 736 N.E.2d 1.

{¶ 37} As additional support for their positions, the board of elections and intervening respondents cite to several cases interpreting R.C. 519.12(H). *See, e.g.*, *Jacquemin*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, at ¶ 8; *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 63. R.C. 519.12(H) applies to referendums of township zoning resolutions and requires that the referendum petition "be accompanied by an appropriate map of the area affected by the zoning proposal." Such a map must "not mislead the average person about the area affected by the zoning resolution." *McCord at* ¶ 63. However, relators presented their referendum petition under R.C. 731.31, not R.C. 519.12. R.C. 731.31 contains no requirement that the referendum petition be circulated with an appropriate map. These cases thus have no direct relevance to the referendum petition.

**{¶ 38}** Intervening respondents also cite to *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 35, which they argue held that if a circulator includes "additional material" with a referendum petition, the additional material will invalidate the petition if it is misleading. *Brown* concerned a referendum petition of a county zoning resolution submitted under R.C. 303.12(H). *Brown* at ¶ 11. The rezoning resolution that was passed by the county included a map of the territory to be rezoned, which the referendum petitioners included with the petition, along with the text of the resolution. *Id.* at ¶ 15. The relators in *Brown* requested a writ of prohibition to prohibit the board of elections from placing the referendum on the ballot, arguing that the map was inaccurate. *Id.* at ¶ 1, 24. This court held that R.C. 303.12(H) does not require an appropriate map to accompany a referendum petition and stated that "the map is [therefore] akin to additional material, which will not invalidate the petition unless it is misleading." *Brown* at ¶ 34-35. We ultimately found that the board of elections did not abuse its discretion when it concluded that the map was not misleading. *Id.* at ¶ 36.

**{¶ 39}** *Brown*, however, is inapplicable to relators' referendum petition and the aerial-photo map. The referendum petitioners in *Brown* submitted the map as part of the official petition that they submitted to the board of county commissioners. *Id.* at ¶ 15; *see also* R.C. 303.12(H). By "additional material," this court was referring to material that is included as part of the official petition but not required to be included by statute—not, as here, explanatory materials that were not part of the referendum petition.

**{¶ 40}** Other than *Brown*, the board of elections and intervening respondents have not cited any authority that would allow the board of elections to invalidate the petition because of the aerial-photo map. The petition contained an accurate copy of the map depicting all 263 acres to be annexed as part of the text of the ordinance, and the only testimony regarding the use of the aerial-photo map

was that circulators used it to point out where the territory was located in relation to Marysville. Therefore, we conclude that the board of elections and the secretary of state abused their discretion by removing the referendum from the ballot based on the aerial-photo map.

### E. Remaining arguments

#### 1. Intervening respondents' administrative-act argument

{¶ 41} Intervening respondents also argue that relators are not entitled to a writ because the annexation ordinance was an administrative, not legislative, act. Administrative acts are not subject to referendum proceedings. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 697 N.E.2d 181 (1998), paragraph two of the syllabus. The board of elections does not make this argument.

{¶ 42} We refrain from ruling on this argument. A protestor may bring an election protest on the grounds that a referendum petition concerns an administrative action. *See State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 17-18, 48. But the protestor here, intervening respondent Warner, did not include this ground in his written protest. One board-of-elections member did state in his letter to the secretary of state that one of his several reasons for sustaining the protest was that he believed the annexation was an administrative action, but the other board members and the secretary of state did not mention this ground in explaining their decision to vote to sustain the protest. And the board of elections has not defended its decision on this ground here.

{¶ 43} We have previously declined to address arguments in expedited election cases that an election protestor did not raise in his written protest. *See, e.g., State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 20; *State ex rel. Oster v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 480, 485, 756 N.E.2d 649 (2001);

*Cooker,* 80 Ohio St.3d at 308, 686 N.E.2d 238. In these cases, the protestor was the relator, but similarly, we will limit our consideration here to the claims that the election protestor raised in his protest, on which the board of elections and the secretary of state removed the referendum from the ballot and on which the board of elections defends its decision here.

{¶ 44} Moreover, we refrain from deciding this issue here because intervening respondent Highland Realty Development previously filed an election protest against the referendum petition on May 11, which alleged that the annexation ordinance was an administrative act. The board of elections denied this protest on June 13. There is no indication that Highland Realty Development filed any court action to challenge that decision. Had Highland Realty Development attempted to bring a challenge to the board of elections' decision in mid-September, we likely would have dismissed it as barred by laches.

### 2. Board of elections member's alleged conflict of interest

{¶ 45} Relators also argue that a member of the board of elections who voted to remove the referendum from the ballot had a conflict of interest and should have recused himself from voting on the protest. Because we grant realtors' requested writ on other grounds, we need not decide this issue.

### 3. Attorney fees

{¶ 46} Finally, relators request an award of attorney fees. We deny this request. Relators did not include a separate argument in their brief regarding the request, and thus, it is waived. *See State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 69. In addition, there is no evidence that the board of elections or intervening respondents acted in bad faith. *See State ex rel. Dellick v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 55 (absent a statutory provision allowing attorney fees, attorney fees are generally only available if the losing party acted in bad faith).

### III.  CONCLUSION

**{¶ 47}** The board of elections and the secretary of state abused their discretion and acted in clear disregard of the applicable law when they removed the referendum from the ballot.  Because they did so, we grant relators' requested writ of mandamus and order the board of elections to put the referendum on the November 7, 2023 general-election ballot.  We deny relators' attorney-fees request.

Writ granted.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Shane W. Ewald, L.L.C., and Shane W. Ewald; and The Law Office of Tricia A. Sprankle and Tricia Ann Sprankle, for relators.

David W. Phillips, Union County Prosecuting Attorney, and Thayne D. Gray, Assistant Prosecuting Attorney, for respondent.

Vorys, Sater, Seymour and Pease, L.L.P., Joseph R. Miller, Christopher L. Ingram, Elizabeth S. Alexander, and Muna Abdallah, for intervening respondents.

_____